UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THOMAS KLOS,

      Plaintiff,

  -against-

JOHN BLIGH, CHESTER CLARK, KARISSA
KARN, ROBERT PHANEUF, JOHN DOE, THE
LEGAL AID SOCIETY OF NASSAU COUNTY,
JANE DOE, CHILD PROTECTIVE SERVICES,
*each in their official and individual capacities*,

      Defendants.
----------------------------------------------------------------X

**OPINION AND ORDER**
**13-CV-5449 (SJF)(ARL)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 3 1 2014   ★

**LONG ISLAND OFFICE**

FEUERSTEIN, District Judge.

  Before the Court is Thomas Klos' ("plaintiff") complaint accompanied by an application to proceed *in forma pauperis*. Upon review of plaintiff's declaration in support of his application to proceed *in forma pauperis*, the Court finds that plaintiff's financial status qualifies him to file this action without prepayment of the filing fees pursuant to 28 U.S.C. § 1915(a)(1). Accordingly, the application to proceed *in forma pauperis* is **GRANTED**. For the reasons set forth below, however, plaintiff's claims are *sua sponte* **dismissed in part** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim on which relief can be granted.

**I. Background**

  ***The Parties***

  Plaintiff Thomas Klos ("plaintiff"), *pro se*, filed a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983 alleging: false arrest; conspiracy to deprive him of his civil rights; failure to intervene; denial of due process; official misconduct; denial of equal protection; violation of his eighth amendment right to be free from excessive bail; and violation of his sixth amendment right to effective assistance of counsel. Compl. ¶¶ 1, 81-112. Defendants John

Bligh ("Bligh"), Chester Clark ("Clark"), Karissa Karn ("Karn") and Robert Phaneuf ("Phaneuf") were Nassau County police officers with the Eighth Precinct at the relevant time. *Id.* at ¶¶ 2-5. Defendant John Doe refers to the unidentified employee of the Legal Aid Society of Nassau County who represented plaintiff at his September 26, 2010 arraignment. *Id.* at ¶ 6. Defendant Legal Aid Society of Nassau County is an organization that provides legal representation and assistance to indigent criminal defendants. *Id.* at ¶ 7. Defendant Jane Doe refers to the unidentified employee of the Nassau County Office of Child Protective Services who visited plaintiff while he was detained at the Nassau County Correctional Center in September 2010. *Id.* at ¶ 8. Defendant Child Protective Services of Nassau County, part of the Nassau County Social Services Department, investigates allegations of child abuse and neglect. *Id.* at ¶ 9.

### *Facts*

In September 2009, plaintiff began renting a room in Agnes Hamel's ("Hamel") residence in North Massapequa, New York, where she resided with her boyfriend Eugene Thomas Smith ("Smith"). *Id.* at ¶18. Plaintiff learned that Smith had previously been indicted and tried for murder, on which he was acquitted, and on charges of larceny, for which he served jail time. *Id.* at ¶¶ 17, 19. In subsequent conversations with plaintiff, Smith admitted that on July 15, 1982, he intentionally shot and killed an individual named Edward Groncki after he refused to pay a debt owed to Smith. *Id.* at ¶¶ 14, 19.

In September 2010, Hamel asked plaintiff to accompany her to the veterinarian on September 25 to have her five dogs and seven cats vaccinated. Smith could not assist because he had an outstanding warrant and feared being arrested. *Id.* at ¶ 20.

On September 24, 2010, plaintiff returned to his room at Hamel's residence with an infant child ("child") for whom he was caring while the child's mother attended college. *Id.* at ¶ 21.

As plaintiff prepared to accompany Hamel and her pets to the veterinarian, he advised her that the child was coming with them. *Id.* at ¶22. Hamel asked plaintiff to leave the child with Smith, but plaintiff adamantly refused. *Id.* at ¶ 23. Plaintiff's refusal angered both Smith and Hamel, who both began arguing loudly with plaintiff. *Id.* at ¶24. Plaintiff then retrieved a small audio recorder from his room and began recording the argument without Hamel's or Smith's knowledge. *Id.* at ¶ 25. Hamel canceled the plans for that morning and approximately one (1) minute later, plaintiff placed the child, who was in a car seat, by the front door while he packed some items to leave for the day. *Id.* at ¶¶ 26-27. Smith, who continued arguing with plaintiff, became more irate and accused plaintiff of not trusting him. *Id.* at ¶ 28.

As plaintiff passed through the living room, he observed Smith pointing a rifle towards the ceiling above plaintiff's head, which he began slowly lowering towards plaintiff. *Id.* at ¶ 29. Plaintiff feared for his life because he knew Smith had killed Groncki with a rifle during a heated argument. *Id.* at ¶ 30. He lunged at Smith, took hold of the rifle's barrel and pulled it abruptly and forcefully in an attempt to pull it from Smith's grasp. *Id.* at ¶¶ 31-32. Smith refused to let go of the gun and fell forward over a coffee table, at which time plaintiff fell on Smith and took possession of the rifle. *Id.* at ¶ 33. Plaintiff set the rifle aside as he wrestled with Smith and attempted to stand when Hamel took the rifle and used it to hit plaintiff twice across his back. *Id.* at ¶¶ 34-35. Plaintiff freed himself from Smith, stood up, grabbed the rifle from Hamel and put it in his car. *Id.* at ¶¶ 36-38. He then dialed 911, informed the operator he had been threatened with a gun and gave Hamel's address. *Id.* at ¶ 39. Plaintiff reentered the residence and detained Smith until the police arrived. *Id.* at ¶ 40.

When police officer defendants Bligh, Clark, Karn and Phaneuf arrived at the residence, plaintiff advised the officers he had been arguing with Smith and Hamel and that Smith had

pointed a rifle at him. *Id.* at ¶ 41. He recognized Officer Bligh as Hamel's friend. *Id.* at ¶ 43. Plaintiff advised the officers that he had taken the gun from Smith and placed it in his vehicle and that he wanted Smith arrested for pointing the rifle at him. *Id.* Plaintiff also advised the police that there was an outstanding warrant for Smith. *Id.* at ¶ 42. One of the police officers retrieved the rifle from plaintiff's car and discovered that it contained seven (7) live rounds of ammunition. *Id.* at ¶ 44. Officer Bligh entered the living room to speak with Hamel and Smith, at which time plaintiff put his tape recorder on the living room table and left the immediate area. *Id.* at ¶ 45.

During their conversation, Hamel and Smith acknowledged that plaintiff lived at the residence but that they did not want him to return. Defendant Bligh offered to ensure that plaintiff would not return and asked whether they knew of another address to use for plaintiff. Although Hamel and Smith knew plaintiff had a friend in Queens, New York, the exact address was unknown. *Id.* at ¶ 46. Bligh acknowledged that Smith had an outstanding warrant, but stated he would not act on it. *Id.* at ¶ 47. Bligh also advised Hamel and Smith that he would do them a favor and charge plaintiff with assault. He asked Smith whether he had any injuries and Smith offered his broken dentures as proof of a broken tooth and an untreated melanoma on his right cheek as evidence of a laceration. Bligh advised Smith and Hamel to go to the hospital. *Id.* at ¶ 48. Bligh expressed an extreme fondness for Hamel and indicated that he would take care of everything for which both Smith and Hamel expressed their appreciation. *Id.* at ¶ 49.

Defendants Bligh, Clark, Karn and Phaneuf refused plaintiff's request to charge Smith and take him into custody despite the existence of the outstanding warrant. *Id.* at ¶ 50. After the conversation between Bligh, Smith and Hamel, the couple arranged to go to Nassau University Medical Center ("NUMC"); when Bligh went outside to converse with his fellow officers, plaintiff retrieved his tape recorder from the living room. *Id.* at ¶ 51.

At the request of Bligh, Emergency Medical Technician Steven Doucette ("Doucette") arrived at Hamel's residence and recommended Smith be immobilized with a neck collar and back board, which he refused. *Id.* at ¶¶ 52, 54. Bligh, Hamel and Smith, accompanied by Doucette and police officer John Beisel, were transported to NUMC by ambulance. *Id.* at ¶53.

Defendant police officers indicated to plaintiff that they were taking him to the police station to "sort things out" without telling plaintiff he was being arrested, although they gave him an opportunity to secure his property in his car and to arrange for someone to pick up the child. *Id.* at ¶ 55. Some moments later, plaintiff was placed under arrest by defendants Bligh[1] and Karn and was transported to the Eighth Precinct for processing. *Id.* at ¶¶ 56-57.

At the police station, Bligh repeatedly asked plaintiff for an address other than the residence where he rented a room from Hamel. When plaintiff declined to provide another address, Bligh manufactured one and used it on plaintiff's arrest documents. *Id.* at ¶ 58. While Smith and Hamel were at NUMC with Bligh, he handwrote nearly identical statements on behalf of the couple, which they signed. *Id.* at ¶ 59. Bligh then charged plaintiff with assault in the third degree in violation of New York Penal Law ("NYPL") § 120.00(1); assault in the third degree in violation of NYPL § 120.00(2) and endangering the welfare of a child in violation of NYPL § 260.10(1). *Id.* at ¶ 60. In two (2) of the three (3) accusatory instruments authored and filed by Bligh, he claimed he witnessed plaintiff assault Smith and Hamel. *Id.* at ¶ 61. Bligh also deliberately misstated where the child had been while plaintiff argued with and wrestled the rifle from Smith and Hamel by claiming the child was in the living room instead of by the front door. *Id.* at ¶ 62. Bligh and Karn completed a document entitled "Nassau County Police Department

---

[1] Clearly, Bligh could not simultaneously arrest plaintiff (Compl. ¶ 56) and be in the ambulance with Hamel and Smith (*Id.* at ¶ 53). Subsequent allegations establish that Bligh accompanied Hamel and Smith to the hospital and then participated in plaintiff's arrest.

Crime Report," which indicated that neither Smith nor Hamel was injured as a result of the incident with plaintiff. *Id.* at ¶ 63.

Meanwhile, at NUMC, Smith had CAT scans of his head/brain, cervical spine, thorax, abdomen, pelvis and a maxillofacial scan, all of which were negative. *Id.* at ¶ 64. Smith was, however, diagnosed as suffering from poisoning and the toxic effects of drugs. *Id.* at ¶ 66. Smith left the hospital of his own accord and against medical advice at approximately 3 p.m. on September 25, 2010. Smith signed an acknowledgment and release form which was witnessed by LPN Thelma Campbell. *Id.* at ¶ 67.

On September 26, 2010, plaintiff was arraigned in Nassau County District Court, Hempstead, New York, where he was represented by defendant John Doe of The Legal Aid Society of Nassau County. *Id.* at ¶¶ 68-69. Defendant John Doe did not consult with plaintiff prior to the arraignment, nor did he prepare adequately. *Id.* at ¶ 70. Despite the fact that plaintiff advised John Doe that he resided at the address where the incident occurred, when the court stated that plaintiff lived in Queens based on the information supplied by Bligh, John Doe did not object or attempt to correct the judge. *Id.* at ¶ 71. Then, the assistant district attorney presented the court with inaccurate and misleading information about plaintiff while urging a high bail. *Id.* at ¶ 72. Plaintiff asked John Doe to challenge the integrity of the information, which he refused to do and plaintiff was arraigned on the misinformation. *Id.*

The court issued two (2) orders of protection, which prohibited plaintiff from communicating with or going near Hamel or Smith, which plaintiff asserts constituted a de facto eviction because the court was unaware of plaintiff's actual residence. *Id.* at ¶¶ 73-74. Plaintiff's bail was set at $2,500 and because he was unable to post bail, he was transported to the Nassau

County Correctional Center ("NCCC") in East Meadow, New York. *Id.* at ¶¶ 75-76.

While plaintiff was being held at the NCCC, he was advised that he had a "legal visit" from a representative of the Legal Aid Society of Nassau County. He then met with a woman, Jane Doe, who interviewed him regarding the events of September 25, 2010. Jane Doe was, however, from the Nassau County Office of Child Protective Services ("CPS"). *Id.* at ¶ 77. CPS subsequently made an unfavorable determination with respect to plaintiff, which was added to a file created expressly for plaintiff. Plaintiff had no opportunity to be heard or question witnesses, nor was he made aware of the evidence against him prior to CPS's unfavorable determination. *Id.* at ¶ 78. Plaintiff contends that Jane Doe should not have interviewed him outside of his lawyer's presence.

On November 14, 2011, the Honorable Sharon M. J. Gianelli, who presided over the criminal proceedings, dismissed the three charges filed by Officer Bligh. *Id.* at ¶ 80.

## II. Discussion

### A. Application of 28 U.S.C. § 1915

Title 28 U.S.C. § 1915(e)(2)(B)(i-iii) requires a district court to dismiss an *in forma pauperis* action if it is frivolous or malicious, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See also* 28 U.S.C. § 1915A(b)(1) and (2).

In considering whether "to dismiss the claims of plaintiffs proceeding *pro se*, courts in this Circuit are instructed to construe the pleadings liberally." *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)). This is especially true of a plaintiff who alleges a civil rights violation. *Weinstein* 261 F.3d at

132. To determine whether a complaint should be dismissed for failure to state a claim, the court must assume as true all allegations contained in the complaint. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). However, it is "well settled that conclusory allegations merely stating general legal conclusions necessary to prevail on the merits of a claim, unsupported by factual averments, will not be accepted as true." *ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, No. 02 Civ. 1103, 2005 WL 1843253, at *3 (N.D.N.Y. July 29, 2005). The Supreme Court has held that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court held that courts should employ a two-pronged approach and "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" because they are not supported by factual allegations. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**B.     Title 42 U.S.C. § 1983**

Pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"The text of the statute purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher*, 522

U.S. 118, 123 (1997) (citing 42 U.S.C. § 1983). Section 1983 "provides a mechanism for enforcing individual rights "secured" elsewhere, *i.e.*, rights independently "secured by the Constitution and laws" of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). "By the plain terms of § 1983, two–and only two–allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961)).

### 1. Plaintiff's Claims Against the Nassau County Police Officers

The complaint alleges the following claims with regard to police officers Bligh, Clark, Karn and Phaneuf: false arrest; conspiracy to deprive plaintiff of his civil rights; denial of equal protection for failing to arrest Smith. Compl. ¶¶ 81-86, 89-90, 101-102. The complaint also alleges that Bligh conspired with Hamel and Smith to charge plaintiff with fictitious crimes and obtain false statements to deprive plaintiff of his civil rights. *Id.* at ¶¶ 87-88, 91-92. As to Clark, Karn and Phaneuf, the complaint alleges that they deprived plaintiff of his civil rights as guaranteed under the Fourth and Fourteenth Amendments by failing to intervene when Bligh made the false charges against plaintiff. *Id.* at ¶¶ 93-94. As to Bligh, the complaint alleges that he deprived plaintiff of due process by listing a manufactured address which resulted in plaintiff's eviction from his residence without due process. *Id.* at ¶¶ 95-96, 97-98. The complaint also alleges that Bligh committed official misconduct by charging plaintiff with criminal offenses not supported by probable cause. *Id.* at ¶¶ 99-100.

### a. *Official Capacity Claims*

Plaintiff's complaint purports to sue all defendants in their individual and official capacities. Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), section 1983 claims against police officers in their official capacities are barred unless a plaintiff can show that the challenged conduct resulted from a municipal custom or policy. *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

The complaint does not allege any conduct attributable to a municipal custom, practice or policy which resulted in a deprivation of plaintiff's constitutional rights. Accordingly, plaintiff's claims against Bligh, Clark, Karn and Phaneuf in their official capacities are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

### b. *Individual Capacity Claims*

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166.

"Where damages are sought in a section 1983 action, the defendant must be responsible for the alleged constitutional deprivation: '[T]he general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.'" *Purdy v. Town of Greenburgh*, 166 F. Supp. 2d 850, 869 (S.D.N.Y. 2001) (quoting *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). *See Miller v. City of New York*, No. 12 Civ. 2965, 2012 WL 2579336, at *1 (E.D.N.Y. July 3, 2012) ("'Because vicarious liability is

inapplicable to *Bivens* and § 1983 suits, a Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Accordingly, a complaint must allege a defendant's direct or personal involvement in the alleged constitutional deprivation.

At this stage of the pleadings, plaintiff has sufficiently alleged that defendants Bligh, Karn, Clark and Phaneuf, through their own individual actions, violated plaintiff's constitutional rights. Accordingly, plaintiff's claims numbered one (1) through eleven (11) against the named officers in their individual capacities shall proceed.

### 2. Plaintiff's Claims Against the Legal Aid Society and John Doe

The complaint alleges that the Legal Aid Society of Nassau County and John Doe denied plaintiff due process and the effective assistance of counsel by: (1) refusing to challenge the inaccurate information presented at plaintiff's arraignment; (2) refusing to challenge the information regarding plaintiff's alleged residential address; and (3) failing to provide plaintiff with meaningful and effective representation at plaintiff's arraignment. Compl. ¶¶ 103-108.

As discussed above, claims brought pursuant to 42 U.S.C. § 1983 require a plaintiff to establish that his constitutional rights were violated by a person who acts "under color of any statute, ordinance, regulation, custom, or usage," i.e., the state action requirement. *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (" 'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.' ") (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).

Generally, attorneys, whether with the Legal Aid Society, court-appointed or privately

retained, are not state actors for purposes of § 1983. *Lukes v. Leventhal*, No. 12 Civ. 3707, 2012 WL 4891621, at *3 (E.D.N.Y. Oct. 11, 2012). *See Vermont v. Brillon*, 129 S. Ct. 1283, 1291 (2009) (holding that "assigned counsel ordinarily is not considered a state actor"); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("With respect to Dodson's § 1983 claims against Shepard, we decide only that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

Plaintiff's claims against the Legal Aid Society of Nassau County and John Doe challenge the traditional functions of counsel to a defendant in a criminal proceeding and, accordingly, are dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Plaintiff's Claims Against Jane Doe and Child Protective Services

Plaintiff's complaint alleges that Jane Doe's false representation that she was an employee from the Legal Aid Society, which induced him into discussing the specifics of the incident at the Hamel residence, violated his Fifth, Sixth and Fourteenth Amendment rights. Compl. ¶ 110. The complaint alleges that the unfavorable determination made by Jane Doe and CPS against plaintiff, without affording him an opportunity to be heard, also violated plaintiff's Fifth, Sixth and Fourteenth Amendment rights. *Id.* at ¶ 112.

#### *a. Child Protective Services*

"Federal courts must look to state law to determine whether a government department may be sued." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (citing Fed. R. Civ. P. 17(b)). "Under New York law, a department of a municipal entity is merely a

subdivision of the municipality and has no separate legal existence." Accordingly, municipal departments like CPS are not amenable to suit. Given, however, plaintiff's *pro se* status, his claim will be construed as one brought against Nassau County.

As discussed above, in a § 1983 suit against a municipality, a plaintiff must allege that his or her constitutional rights were violated by a state actor whose conduct is attributable to a custom, policy or regulation endorsed by the municipality. *See, supra, Monell v. Dep't of Social Serv.* Here, the complaint does not allege that Jane Doe's actions were the result of a custom, official policy or regulation endorsed or promulgated by Nassau County. Accordingly, the claims against Nassau County are dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

*Leave to Amend*

Federal Rule of Civil Procedure 15(a)(2) provides that a party shall be given leave to amend a complaint "when justice so requires." A grant of leave to amend, however, is properly denied when it is made for: " 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"[W]hen addressing a pro se complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). Plaintiff is granted leave to amend

only as to the § 1983 claim which should have named Nassau County as a defendant instead of Child Protective Services **provided the amended complaint is filed within thirty (30) days of the date this Order is signed or the claim will be dismissed with prejudice.** Plaintiff is cautioned that the amended complaint shall completely supersede the original complaint and, therefore, all claims against all defendants must be included.

### b. *Jane Doe*

Plaintiff's claims against Jane Doe in her official capacity are dismissed with prejudice for failure to state a claim based on *Monell* unless, as discussed above, plaintiff files an amended complaint naming Nassau County as a defendant. Based on the complaint's allegations, the claims against Jane Doe in her individual capacity shall proceed.

Because Jane Doe is identified only as an employee of Child Protective Services and the generic name "Jane Doe," the United States Marshal Service will be unable to serve this defendant without additional information. Accordingly, the Clerk of the Court shall send a copy of the complaint and this Order to the Nassau County Attorney. The County Attorney shall produce and serve on plaintiff and the Court any files created by Child Protective Services of Nassau County which concern plaintiff. *See Valentin v. Dinkins*, 121 F.3d 72, 76) (2d Cir. 1997) (finding an abuse of discretion where the district court dismissed a civil rights action for failure to prosecute and holding "[t]he district court may pursue any course that it deems appropriate to a further inquiry into the identity" of the unidentified state actor).

**The Nassau County Attorney is hereby requested to produce the information specified above regarding any files concerning plaintiff which were created by Child Protective Services of Nassau County for service on the plaintiff and the Court within two**

(2) weeks from the date he or she is served with a copy of this Order. If and when this information is provided to plaintiff, he shall amend the complaint to include the name of the defendant currently identified as Jane Doe of Child Protective Services. At that time, the Clerk of the Court shall issue a summons and shall forward copies of the summons and the complaint to the United States Marshal Service for service upon the defendant identified as Jane Doe without prepayment of fees.

III. Conclusion

For the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is **GRANTED**. Plaintiff's claims against defendants Bligh, Clark, Karn and Phaneuf are *sua sponte* **dismissed with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1) to the extent plaintiff sues these defendants in their official capacities. To the extent they are sued in their individual capacities, the claims against defendants Bligh, Clark, Karn and Phaneuf shall proceed.

Plaintiff's claims against the Legal Aid Society of Nassau County and John Doe are *sua sponte* **dismissed with prejudice** for failure to state claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1).

Plaintiff's claims against Child Protective Services are *sua sponte* **dismissed with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1), **unless plaintiff files an amended complaint within thirty (30) days of the date this Order is signed.** The claims against Jane Doe are **dismissed with prejudice** to the extent she is sued in her official capacity pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1) **unless plaintiff files an amended complaint within thirty (30) days of the date this Order is signed.** The

-15-

claims against Jane Doe in her individual capacity shall proceed.

**The Nassau County Attorney is hereby requested to produce the information specified above regarding the Child Protective Services' files concerning plaintiff for service on plaintiff and the Court within two (2) weeks of the date on which he or she is served with this Order.** Once this information is provided to plaintiff, the complaint will be amended to include the name for the defendant currently identified as Jane Doe of Child Protective Services. At that time, the Clerk of the Court shall issue a summons and shall forward copies of the summons and the complaint to the United States Marshal Service for service upon the defendant currently identified as Jane Doe without prepayment of fees.

The Clerk of the Court shall: (1) issue summonses for defendants John Bligh, Chester Clark, Karissa Karn and Robert Phaneuf; (2) forward copies of the summonses, the complaint and this Order to the United States Marshal Service for service upon the individual defendants without prepayment of fees; (3) send a copy of the complaint and this Order to the Nassau County Attorney; and (4) serve notice of entry of this Order upon plaintiff in accordance with Federal Rule of Civil Procedure 77(d)(1).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated: July 31, 2014
      Central Islip, New York

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein, U.S.D.J.